**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 1 2004**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

EFREM ZEMBLISH HARRIS, also known as Base,

      Defendant-Appellant.

No. 03-5117

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 02-CR-88-H)**

---

Michael G. McGuire, Tulsa, Oklahoma, for the defendant-appellant.

Robert T. Raley, Assistant United States Attorney (David E. O'Meilla, United States Attorney, and Kevin Danielson, Assistant United States Attorney, on the brief), Tulsa, Oklahoma, for the plaintiff-appellee.

---

Before **SEYMOUR**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

      Defendant Efrem Harris was convicted following a jury trial of having engaged in

a drug-related conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), (b)(1)(D), 843(b), 846 and 856; possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and traveling in interstate commerce for the purpose of committing unlawful acts, in violation of 18 U.S.C. § 1952. Due to his criminal history, he was sentenced to a mandatory term of life imprisonment on the conspiracy conviction. Harris appeals his conspiracy and possession with intent to distribute convictions, as well as the life sentence on his conspiracy conviction. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

### *Defendant's dealings with Clay Harrison*

In the summer of 1998, defendant (who went by the street name "Base") traveled from his home in Tulsa, Oklahoma, to El Paso, Texas, where he met Clay Harrison, who lived in El Paso and worked for Southwest Airlines (SWA). Defendant gave Harrison a small suitcase and a "brick" of cocaine wrapped in duct tape and instructed Harrison to put the cocaine in the suitcase and place the suitcase inside one of SWA's Tulsa-bound airplanes. Harrison did as instructed and was paid $500 by defendant.

On November 6, 1998, defendant again met Harrison in El Paso and asked Harrison to perform two tasks. First, defendant gave Harrison two bricks of cocaine and a suitcase and asked him to place the cocaine in the suitcase and place the suitcase inside a Tulsa-bound airplane. Second, defendant asked Harrison to transport a load of

marijuana from El Paso to Tulsa. Harrison agreed to perform both tasks. Immediately after the meeting, Harrison drove to the El Paso airport, picked up a car that had been rented for him by defendant, and met an elderly woman who gave him a paper bag full of money to pay defendant's source for the marijuana. Harrison then returned to his home, placed the bag of money under the passenger seat of the rental car, parked the rental car in a lot across from his home, and contacted a man named "Chewie," who was to supply the marijuana. Chewie thereafter called Harrison and informed him the rental car was loaded with marijuana and ready to go.

On the following afternoon (November 7, 1998), after placing the cocaine inside a Tulsa-bound airplane and rewrapping the bundles of marijuana at defendant's direction, Harrison and his girlfriend left El Paso in the rental car and headed for Tulsa. At approximately 11:50 p.m., Harrison and his girlfriend were stopped for speeding in Oldham County, Texas. During a consensual search of the rental car, Texas authorities discovered the marijuana and arrested Harrison and his girlfriend. Harrison waived his Miranda rights, informed the Texas authorities of his arrangement with defendant to transport marijuana, and ultimately agreed to cooperate with the Tulsa police in a controlled delivery of the marijuana.

The controlled delivery took place late on the evening of November 8, 1998. Harrison, with an undercover Tulsa police officer posing as his girlfriend, drove the rental car with the marijuana to a Tulsa convenience store where they met and briefly spoke to

3

defendant. Per defendant's instructions, Harrison and the undercover officer followed defendant to an apartment complex in Tulsa and parked beside defendant's vehicle in the parking lot. Harrison got out of the rental car and into defendant's vehicle. Defendant gave Harrison a bag of money and a baggie of cocaine as payment for transporting the marijuana. Defendant was immediately arrested.

Following defendant's arrest, Tulsa police obtained and executed a search warrant for his apartment (located in the complex where his arrest occurred). The police recovered $80,740 in cash and a loaded semiautomatic handgun from defendant's bedroom. The police also recovered travel receipts confirming that defendant had flown to El Paso on November 5, 1998, and returned to Tulsa on the afternoon of November 6, 1998. Additionally, police recovered a personal phone book that contained a listing for Harrison, as well as a listing for an individual named "Chewie" living in El Paso.

*Defendant's dealings with Hubert Wilkerson*

In the late summer or early fall of 1998, defendant met a convicted felon named Hubert Wilkerson at a Tulsa health club. Defendant agreed to supply Wilkerson with cocaine to sell. Defendant also showed Wilkerson how to "cook" powder cocaine into crack cocaine. Between approximately November 1998 and June 2000 (and notwithstanding his arrest on November 9, 1998), defendant supplied Wilkerson with cocaine on approximately eight occasions. One transaction involved 4.5 ounces of crack cocaine for which Wilkerson paid defendant $2,500. The remaining transactions

4

involved over 100 ounces of powder cocaine for which Wilkerson paid defendant in excess of $60,000. On each occasion, Wilkerson cooked the powder cocaine into crack cocaine and sold the crack cocaine to other individuals.

On June 16, 2000, Wilkerson was arrested by the Tulsa police and a search warrant was executed on Wilkerson's residence that same day. The police recovered a safe in the garage of Wilkerson's residence, under the hood of an older model truck. They discovered ten small baggies of crack cocaine, approximately $9,000 in cash, and a set of scales inside the safe. Following Wilkerson's arrest, defendant paid Wilkerson's bond, hired an attorney to represent Wilkerson, and urged Wilkerson not to provide any inculpatory information to the grand jury investigating defendant.

*Defendant's use of Willie Jackson's residence*

On June 17, 2000, the Tulsa police executed a search warrant on a residence located at 4418 North Detroit in Tulsa. The residence was occupied by Willie Jackson and allegedly had been used by defendant to conduct various drug transactions, including approximately three of the cocaine transactions with Wilkerson. During the search of that residence, the police recovered a set of digital scales, 247 counterfeit $100 bills, 2 grams of marijuana, 316 grams of crack cocaine, 59 grams of powder cocaine, and a semiautomatic rifle. Jackson testified that, beginning in March 1998, he allowed defendant to use his residence to store drugs, to "cook" crack cocaine, and to conduct drug transactions.

*Procedural background*

On June 6, 2002, a federal grand jury returned an eight-count indictment against defendant. Count 1 of the indictment charged that between June 1998 and the date of the indictment, defendant conspired with others (a) to possess with intent to distribute and to distribute in excess of 5 kilograms of cocaine and in excess of 50 grams of cocaine base, (b) to possess with intent to distribute and to distribute marijuana, (c) to use telecommunication facilities to commit or facilitate acts constituting a felony violation of 21 U.S.C. § 843(b), and (d) to establish or maintain a location for the purpose of storing and distributing controlled substances, all in violation of 21 U.S.C. § 846. Count 2 of the indictment charged that on or about November 9, 1998, defendant intentionally possessed with intent to distribute approximately 45 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). Count 3 of the indictment charged that on or about June 16, 2000, defendant intentionally distributed in excess of 50 grams of a mixture or substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). Count 4 of the indictment charged that on or about June 17, 2000, defendant intentionally distributed in excess of 50 grams of a mixture of substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii). Count 5 of the indictment charged that from in or about 1998 until December, 2000, defendant "open[ed] and maintain[ed] a place located at 4418 N. Detroit" in Tulsa "for the purpose of manufacturing, storing and distributing or

6

using cocaine and cocaine base," in violation of 21 U.S.C. §§ 856 and 2. ROA, Vol. II, Doc. 1 at 14. Count 6 of the indictment charged that on or about November 7, 1998, defendant knowingly and willfully traveled in interstate commerce between the State of Texas and the Northern District of Oklahoma with the intention of engaging in the distribution of controlled substances, in violation of 18 U.S.C. § 1952. Count 7 of the indictment charged that on or about August 14, 1998, defendant knowingly and willfully traveled in interstate commerce between the State of Texas and the Northern District of Oklahoma with the intention of engaging in the distribution of controlled substances, in violation of 18 U.S.C. § 1952. Count 8 of the indictment sought the forfeiture of money, real property, and a vehicle that allegedly were connected with defendant's illegal activities.

The case proceeded to trial on February 3, 2003.[1] At the conclusion of all the evidence, the jury found defendant guilty on Count 1 (conspiracy), Count 2 (possession of marijuana with intent to distribute on November 9, 1998), and Count 6 (traveling in interstate commerce on or about November 7, 1998, for the purpose of committing unlawful acts), and acquitted defendant on Count 7 (traveling in interstate commerce on or about August 14, 1998, for the purpose of committing unlawful acts). The jury was

---

[1] Defendant waived his right to a jury trial on Count 8 of the indictment and agreed to let the district court decide that count. Following the trial, the district court found against defendant on Count 8 and ordered him to forfeit approximately $250,000 in cash to the government. That aspect of the underlying judgment is not challenged on appeal.

unable to reach a verdict with respect to Counts 3 (distributing cocaine on June 16, 2000), 4 (distributing cocaine on June 16, 2000), and 5 (opening or maintaining a place for the purpose of manufacturing or distributing or using cocaine and cocaine base). The district court sentenced defendant to a term of life on Count 1, 120 months on Count 2, and 60 months on Count 6 (with the terms of imprisonment on Counts 2 and 6 to run concurrently with each other).

II.

*Sufficiency of evidence - possession with intent to distribute marijuana*

Defendant contends the evidence presented at trial was insufficient to support his conviction on Count 2 of the indictment, which charged that on November 9, 1998, he possessed marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

> In reviewing the sufficiency of the evidence to support a conviction or a denial of a motion for judgment of acquittal, we review the record de novo to determine whether, viewing the evidence in the light most favorable to the government, a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt.

United States v. Colonna, 360 F.3d 1169, 1178 (10th Cir. 2004). To obtain a conviction for possessing a controlled substance with intent to distribute in violation of § 841(a)(1), the government must establish the following elements beyond a reasonable doubt: (1) defendant possessed a controlled substance; (2) defendant knew he possessed a controlled substance; and (3) defendant intended to distribute the controlled substance. See United States v. Castorena-Jaime, 285 F.3d 916, 933 (10th Cir. 2002). "Possession may be

8

actual or constructive." Id. "To prove constructive possession, the Government must show that Defendant knowingly held ownership, dominion or control over the object and premises where the contraband was found." Id. (internal quotations omitted).

Defendant's sole challenge is that the government failed to prove that he had actual or constructive possession of the marijuana charged in Count 2. More specifically, defendant notes the marijuana was located in the rental car driven by Harrison and asserts he "never got in [that] vehicle, never touched or removed the drugs, and at no time ever had any control over the vehicle." Aplt. Br. at 13.

We reject defendant's arguments. The government's evidence overwhelmingly established that defendant had dominion and control over the rental car driven by Harrison. Three government witnesses (two law enforcement officers and Harrison) testified that, according to documents found in the rental car, defendant personally rented the car from Advantage Rent-A-Car in El Paso, Texas, on November 5, 1998. Further, several government witnesses (including law enforcement officers and Harrison) testified that, between November 6, 1998, when Harrison took possession of the rental car at the El Paso airport, and November 9, 1998, when the controlled delivery occurred, defendant asserted considerable control over the whereabouts of the rental car. In particular, it was uncontroverted that defendant made repeated cell phone calls to Harrison while he was en route from El Paso to Tulsa to ensure that the trip was going as planned and to assist Harrison in dealing with any unexpected occurrences. After Harrison was arrested, he

9

told defendant (at the request of law enforcement officials) that the rental car had broken down, stranding him and his girlfriend on the highway. In response, defendant offered Harrison advice and suggestions as to what could be done to get the car fixed. Further, after speaking with Harrison, defendant called the rental car company in El Paso to ensure that a tow truck had been sent to assist Harrison. Lastly, the government's evidence established that defendant directed Harrison where to meet in Tulsa and where to drive the rental car to complete the drug transaction.

In addition to evidence establishing defendant's dominion and control over the rental car, the government's evidence established that defendant asserted considerable control over the marijuana in the rental car. In particular, the government's evidence established that defendant flew from Tulsa to El Paso on November 5, 1998, personally met with the supplier of the marijuana, and arranged for payment and loading the marijuana into the rental car. Further, after the marijuana was loaded, defendant directed Harrison how to repackage the marijuana to mask or reduce its odor.

Considered together, we conclude the evidence presented at trial was sufficient to allow the jury to find that defendant had constructive possession of the rental car and, more importantly, the marijuana contained therein. See United States v. Pearce, 65 F.3d 22, 25-26 (4th Cir. 1995) (finding constructive possession of contraband based in part on fact that contraband was found in vehicle leased by defendants); cf. United States v. Jones, 44 F.3d 860, 870 (10th Cir. 1995) (rejecting theory of constructive possession

10

because, in part, defendant "was not a renter or authorized driver of the rental car");

United States v. Perez, 897 F.2d 751, 754 (5th Cir. 1990) (noting constructive possession

"may be shown by dominion over the vehicle in which the item is located").

*Denial of motion to suppress*

Defendant contends the district court erred in denying his motion to suppress

evidence seized during searches of his residences in 1998 and 2002. According to

defendant, the affidavits in support of the search warrants failed to establish probable

cause because they contained "[h]istorical information . . . occurring over four years prior

to the search[es], and as late as one year prior to the search[es]." Aplt. Br. at 13.

Defendant also complains of material omissions of information from the affidavits.

When reviewing a district court's denial of a motion to suppress, we accept the

district court's factual findings unless clearly erroneous and consider the evidence in the

light most favorable to the government. United States v. Rice, 358 F.3d 1268, 1273 (10th

Cir. 2004). However, the ultimate determination of reasonableness under the Fourth

Amendment is a question of law we review de novo. United States v. Green, 178 F.3d

1099, 1104 (10th Cir. 1999).

In determining whether a search warrant was supported by probable cause, we

review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at

the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a

substantial basis for concluding that probable cause existed.'" United States v. Tisdale,

248 F.3d 964, 970 (10th Cir. 2001) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).  Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched."  United States v. Hernandez-Rodriguez, 352 F.3d 1325, 1330 (10th Cir. 2003) (internal quotations omitted).  Probable cause for a search warrant "cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched."  United States v. Snow, 919 F.2d 1458, 1459 (10th Cir. 1990).  "The determination of timeliness, however, does not depend on simply the number of days that have elapsed between the facts relied on and the issuance of the warrant."  Id. at 1460 (internal quotations omitted).  "[I]nstead, whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  Id.  Where the offense in question is ongoing and continuing, the passage of time is not of critical importance.  United States v. Mathis, 357 F.3d 1200, 1207 (10th Cir. 2004).

Affidavits in support of search warrants are also subject to the requirements of Franks v. Delaware, 438 U.S. 154 (1978).  Franks mandates the suppression of evidence obtained on the basis of an affidavit containing knowingly false information.  See United States v. Iiland, 254 F.3d 1264, 1267 n.1 (10th Cir. 2001).  It also requires the suppression of evidence obtained as a result of material omissions.  Id.

*Affidavit for 2926 East 92nd Street, Apt 405* -- Defendant first challenges the

12

affidavit submitted in support of the search warrant issued on August 21, 2002, for his residence at 2926 East 92nd Street, Apartment 405. Specifically, defendant complains the affidavit referred to four stops and/or arrests that occurred well prior to issuance of the search warrant. Defendant further complains that nowhere in the affidavit "is it explained to the issuing magistrate whatever happen[ed] on th[os]e charges and arrests." Aplt. Br. at 27. According to defendant, "[m]ost of these charges were dismissed by the Tulsa County District Attorney, but this was not disclosed to the issuing magistrate" through the affidavit. Id. at 28. Defendant further argues there was "no information in the affidavit . . . stating drugs were being sold at th[e] residence [on East 92nd Street], or that they were present there according to any informants." Id.

The district court considered these same arguments and rejected them on the merits at a hearing on defendant's motion to suppress. In particular, the court rejected the claim that the information cited by defendant was stale. The court also rejected defendant's claim of material omissions from the affidavit:

> This doesn't remotely establish the requisite intentional knowing, reckless disregard of the truth. The identified paragraphs and the [alleged] omissions in no way claim that there was anything other than an arrest, and the fact that they were not prosecuted does not materially or even remotely change the contents of the affidavit.

ROA, Vol. VI at 17-18.

We conclude the district court properly rejected defendant's challenges to the affidavit. A review of the affidavit indicates that it thoroughly detailed the Tulsa Police

13

Department's multi-year investigation of defendant's drug-related activities and, in doing so, recounted the various occasions on which defendant was stopped and/or arrested by Tulsa police officers and found to be in possession of items frequently associated with drug-dealing. Although it is true that some of the stops and arrests occurred well prior to the date the affidavit was prepared, the affidavit also detailed significant events in the investigation that occurred in January, February, March, and July of 2002. This information, in our view, effectively corroborated or "refreshed" the allegedly "stale" information. See United States v. Spikes, 158 F.3d 913, 924 (6th Cir. 1998). As for the alleged "omissions," it is true the affidavit does not detail the outcome of every police encounter with defendant between 1998 and 2002. Those "omissions," however, are not material since their inclusion would not have otherwise altered or undercut the remaining information contained in the affidavit. Finally, although it is true the affidavit does not allege that any suspected drug-dealing occurred at the residence on East 92nd Street, that was not the purpose of the requested search. Rather, as recounted in detail in the affidavit, the police were interested in searching the residence to obtain records detailing defendant's personal and financial information (e.g., to confirm defendant had no identifiable source of income, other than drug-dealing; to document defendant's large expenditures of cash).

*Affidavit for 1011 East 67th Street South, Apt 1021* -- The other affidavit challenged by defendant was submitted in support of the search warrant issued on

14

November 9, 1998, for defendant's residence at 1011 East 67th Street South, Apartment 1021. Defendant argued that this affidavit contained stale information because it referenced events from 1992 and 1996. As noted by the district court, the affidavit recounted in detail the events of November 8 and 9, 1998, concerning the arrest of Harrison and the subsequent controlled delivery of marijuana to defendant at his apartment complex. That information obviously was not stale and was, by itself, sufficient to provide probable cause for the search of defendant's apartment.

Defendant also complains that the affidavit "provide[d] no information from any source that drugs or drug paraphernalia would be found in this apartment." Aplt. Br. at 29. We conclude there is no merit to this argument. As already noted, the affidavit recounted in detail the circumstances of the controlled delivery to defendant's apartment complex on November 9, 1998. In addition, the affidavit noted that defendant had been jailed in 1992 for distribution of cocaine and had been the subject of three drug investigations between 1996 and the date of the affidavit. We conclude this information, considered together, was more than sufficient to provide probable cause to conclude that drugs or drug paraphernalia would be found in defendant's apartment.

*Imposition of life sentence for conspiracy conviction*

Defendant contends the district court erred in imposing a mandatory life sentence for the conspiracy conviction pursuant to § 841(b)(1)(A) based upon the jury's drug quantity findings and defendant's two prior felony drug convictions. Although defendant

15

admits he has two prior felony drug convictions, he asserts those convictions should be treated as "related," and thus should not have triggered the mandatory life sentence required by § 841(b)(1)(A) because the sentences on those convictions were imposed at the same time and ordered to run concurrently. In support of this argument, defendant points to U.S.S.G. § 4A1.2, which allows prior sentences to be considered as "related" under certain circumstances.

Section 841(b)(1)(A) requires imposition of a "mandatory term of life imprisonment without release" if (1) a defendant is convicted of violating § 841(a), (2) that conviction involved a certain requisite amount of drugs, and (3) the crime was committed "after two or more prior convictions for a felony drug offense have become final." Under 21 U.S.C. § 851(c)(1), the government has the burden of proving, beyond a reasonable doubt, the existence of any such prior felonies. We review de novo whether the evidence presented by the government was sufficient to support the district court's findings with regard to the existence of any such prior felonies. See United States v. Green, 175 F.3d 822, 834 (10th Cir. 1999). In doing so, we view the evidence and reasonable inferences therefrom in the light most favorable to the government and will reverse only if a rational trier of fact could not find beyond a reasonable doubt that the defendant had in fact been convicted of the offenses. Id.

At the sentencing hearing in this case, the district court reviewed in detail the records from defendant's prior federal criminal proceedings. This evidence established,

16

and defendant's counsel conceded, that two separate federal indictments were returned against defendant in the early 1990s. The first indictment was returned against defendant on November 5, 1991, and concerned drug-related activity (distribution of cocaine base) that occurred in September 1990. The second indictment was returned against defendant on July 10, 1992, and concerned drug-related activity (distribution of cocaine base) that occurred on or about October 2, 1991. Defendant ultimately pled guilty in each case and was sentenced to concurrent terms of imprisonment of 27 months. A separate judgment of conviction was entered in each case. Based upon this evidence, the district court found "there were indeed two separate convictions for purposes of the application of . . . Section 841," and concluded it was bound to impose a mandatory life sentence on defendant. ROA, Vol. XVI at 13. In doing so, the district court rejected defense counsel's argument that the two convictions should be considered as related for purposes of sentencing.

As noted by defendant, there is a threshold question of whether the age of the prior convictions precludes him from challenging their use by the district court. Under 21 U.S.C. § 851(e), "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." Here, it is uncontroverted that the prior convictions alleged by the government occurred more than five years before the government filed its information alleging the existence of those convictions. However, defendant does not appear to be challenging the "validity"

17

of those convictions. Rather, defendant seems to be asserting that, as a matter of law, those convictions should be considered as one for purposes of § 841(b)(1)(A). Thus, § 851(e) does not preclude defendant's argument.

In light of the documentation of defendant's prior convictions, and in light of defense counsel's concessions regarding the pertinent facts of those convictions, we conclude the evidence presented at the sentencing hearing was more than sufficient to support the district court's findings. Further, we conclude the court properly rejected defendant's assertion that the two convictions were "related" for purposes of § 841(b)(1)(A). Although it is true the Sentencing Guidelines allow prior sentences to be considered as "related" under certain circumstances for purposes of computing a defendant's criminal history score, see U.S.S.G. § 4A1.2, cmt. n. 3, it is clear from the language of § 841(b)(1)(A) that Congress has adopted a different position. The plain language of § 841(b)(1)(A) only requires the existence of "two or more prior convictions for a felony drug offense," and there is no exception for cases, such as the one at hand, where concurrent sentences were imposed for two or more separate drug convictions.[2]

*Sufficiency of evidence - conspiracy to distribute cocaine and marijuana*

In his final issue on appeal, defendant purports to challenge the sufficiency of the

---

[2] In his appellate brief, defendant refers briefly to other alleged sentencing errors, including "drug quantity estimates, a gun enhancement, and Role in the Offense points." Aplt. Br. at 40. Having concluded the district court properly imposed a life sentence for defendant's conspiracy conviction, it is unnecessary to address these other alleged errors.

evidence to support his conspiracy conviction.  Defendant's real challenge to the conspiracy conviction, however, is that, in his view, it is inconsistent with the jury's inability to reach a verdict on Counts 3, 4, and 5.  More specifically, defendant asserts that the jury's findings "that [he] conspired to possess and distribute cocaine, cocaine base, and marijuana" are at odds with its verdicts on Counts 3 through 5 and its apparent rejection of the testimony of Wilkerson and Jackson.  Aplt. Br. at 43.

Defendant's arguments are without merit.  It is not clear that the jury verdict on the conspiracy conviction is at odds with its inability to reach a verdict on Counts 3 through 5.  Indeed, neither we nor the parties are privy to why the jury was unable to reach a verdicts on Counts 3 through 5.  Even if the verdicts are deemed "inconsistent," it has long been settled that inconsistent verdicts do not provide the basis for reversal of a conviction.  See, e.g., United States v. Powell, 469 U.S. 57, 69 (1984).  Our review of the trial transcript persuades us the government presented more than sufficient evidence to support the conspiracy conviction.

AFFIRMED.