**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JEFFREY SHAUN BAGBY, a/k/a Jeffrey
Sjawn Bagby, a/k/a Jeffrey Shawn Bagby,

      Defendant - Appellant.

No. 11-5050

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:10-CR-00134-CVE-1)**
_____

Leon Schydlower, El Paso, Texas, for Defendant-Appellant.

Leena Alam, Assistant United States Attorney, Tulsa, Oklahoma (Thomas Scott
Woodward, United States Attorney, with her on the brief), for Plaintiff-Appellee.
_____

Before **BRISCOE**, Chief Judge, **SEYMOUR,** and **EBEL**, Circuit Judges
_____

**EBEL**, Circuit Judge.

    Defendant-Appellant Jeffrey Shaun Bagby was indicted on one count of

possessing, with intent to distribute, fifty grams or more of cocaine base (crack), and one

count of being a felon in possession of ammunition. On the morning his jury trial

commenced, Mr. Bagby, against the advice of the district court, waived his right to

counsel and proceeded to represent himself. The jury convicted him on the drug count but acquitted him on the ammunition count. Because of his prior felony drug convictions, Mr. Bagby received a mandatory minimum sentence of life in prison. He now appeals his conviction and sentence. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we AFFIRM.

## I.    BACKGROUND

The following facts were established through trial testimony.[1] On April 16, 2010, Tulsa Police officer Randy MacKenzie received a tip that a man named Jeffrey Bagby was selling cocaine from a residence at 1643 North Columbia Place in Tulsa ("the Columbia residence"). Officer MacKenzie and his partner David Brice began surveillance of the Columbia residence, and shortly thereafter observed Mr. Bagby and a woman departing the premises in an automobile. The officers followed, and observed Mr. Bagby committing several traffic violations, including failing to wear a seat belt, speeding, and rolling through stop signs. The officers alerted another officer, Officer Dupler, who conducted a traffic stop of Mr. Bagby.

Officers MacKenzie and Brice returned to the Columbia residence and knocked on the door. Mike Braggs, who lived at and apparently owned the house, and who permitted Mr. Bagby to live there as well, answered the door. Mr. Braggs consented to a search of the house. Officers stayed out of the southwest bedroom, which Mr. Braggs identified as Mr. Bagby's room, because Mr. Bagby was not there to consent to a search. While at the

---

[1] Mr. Bagby called three witnesses in his defense, but did not himself testify at trial.

2

Columbia residence, the officers received information that Mr. Bagby kept cocaine in the garage, and they asked Mr. Braggs if they could search the garage, which was detached from the house and locked. Mr. Braggs consented to a search and gave them a key to the garage, stating that he "d[id]n't go out there much." Trial Transcript at 51.[2] In the garage officers found, in an old clothes dryer, several plastic baggies containing a substance that appeared to be cocaine base. A subsequent lab test confirmed the substance was cocaine base, and measured the quantity at just under 343 grams (approximately 12 ¼ ounces).

Officer Dupler was then instructed to bring Mr. Bagby back to the Columbia residence, where Officers MacKenzie and Brice questioned him in the patrol car. Officer MacKenzie read Mr. Bagby his Miranda rights, which Mr. Bagby waived. Mr. Bagby told the officers, "Just take the cocaine," and that he would "stop doing it," which Officer MacKenzie took to mean that if the police took the drugs and left, Mr. Bagby would stop selling drugs. Id. at 59. Mr. Bagby also said, "there are about nine ounces of hard[3] in the garage and there's about $9,000 in the bedroom in the safe," and suggested that if they could "work out a deal," he would sign a waiver consenting to a search of his room. Id. Police said there would be no deal, and Mr. Bagby refused to consent to a search of his

---

[2] Volume 2 of the record on appeal, which contains the trial transcript, is not continuously paginated, but the trial transcript itself is. For clarity, therefore, citations to the events and testimony at trial will be denoted by reference to "Trial Transcript" and not by reference to the record on appeal.

[3] "Hard" is slang for crack cocaine. Trial Transcript at 45.

room.  Mr. Bagby also said, "Just take it and leave. . . .  It's all mine.  The old men had nothing to do with it," an apparent reference at least to Mr. Braggs.  Id. at 60.

Police then sought and obtained a search warrant, which they executed that same evening, serving the warrant on both Mr. Braggs and Mr. Bagby.  While waiting for the officer to arrive with the warrant, police took Mr. Bagby inside the house, where they continued speaking with him.  During that conversation, Officer MacKenzie asked Mr. Bagby where he kept his scale, to which Mr. Bagby responded "that he didn't need a scale, that he could cut an eight ball[4] off the rock in the dark."  Id. at 61-62.  Officer MacKenzie "asked him if it would weigh out every time and [Mr. Bagby] asked for a pair of gloves so he could show [Officer MacKenzie]."  Id. at 62.  Mr. Bagby said again to "just take the cocaine and the money and leave, that he wouldn't tell anybody."  Id. Another officer, Officer Tim Wilson, who had been dispatched to help secure the scene, testified that he asked Mr. Bagby "if he had ever thought about the food that he had taken out of the mouths of children because their parents were addicted to cocaine," and Mr. Bagby responded, "Would you know about all the food that I've provided because I sell cocaine?"  Id. at 156.  After the search warrant arrived, officers searched Mr. Bagby's room.  In a safe on the bed, officers found over $17,000 in cash, a picture of Mr. Bagby, and various documents with Mr. Bagby's name on them.  In a cooler on the floor there was another $532 in one-dollar bills.  Officers also found a vial of medication with Mr. Bagby's name on it, and $900 in the pocket of a shirt in the closet.

---

[4] An "eight ball" is slang for an eighth of an ounce, or 3.5 grams.  Trial Transcript at 156.

On July 22, 2010, officers executed a second search warrant on the Columbia residence to search for more drugs and money. In that search, officers recovered a box of ammunition from Mr. Bagby's room, from the same safe in which they had previously found the $17,000 in cash, the picture of Mr. Bagby, and the documents. Officers also recovered a digital gram scale from the room, and various other papers in Mr. Bagby's name, including a letter addressed to Mr. Bagby at the Columbia residence.

A federal grand jury indicted Mr. Bagby on one count of possessing, with intent to distribute, fifty grams or more of a substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii); and one count of possessing ammunition, having previously been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The indictment listed four prior felony convictions in the Oklahoma state courts—three of which were for possession or trafficking of drugs— as predicates for the felon-in-possession charge. The Government also filed, the day before trial, an enhancement information pursuant to 21 U.S.C. § 851. The information listed the same three prior felony drug convictions that were listed in the indictment.

On the morning of trial, Mr. Bagby sought to fire his attorney, Ms. Atteberry, the third attorney who had attempted to represent him below. The district court conducted a thorough colloquy with Mr. Bagby, warning him that a trained lawyer would represent him better and that the rules of evidence and criminal procedure were complex and would not be relaxed for his benefit. The district court concluded that Mr. Bagby knowingly and voluntarily waived his right to counsel, and permitted him to proceed pro se, but appointed Ms. Atteberry to remain as standby counsel.

Additional details regarding the events at trial are set forth as they become relevant in the discussion below.

## II.    DISCUSSION

### A.    Sufficiency of the evidence: constructive possession

At trial, the Government relied on a "constructive possession" theory to prove that Mr. Bagby had "possessed" the crack that was found in the garage, because the Government conceded that they had not shown that Mr. Bagby had actual possession. No drugs had ever been recovered from Mr. Bagby, and there was no evidence that he had ever held the drugs in his hands or had them on his person. Mr. Bagby contends that the evidence was insufficient to show that he had constructive possession of the drugs found in the garage. Specifically, he contends that even if the evidence suggested he owned the drugs that were seized, the evidence was insufficient to show that he had access to them, and that there was no special relationship between himself and Mr. Braggs such that Mr. Bagby could have had access to the drugs through Mr. Braggs. We disagree on the first point, and do not reach the second.

#### 1.    Standard of review

This Court reviews challenges to the sufficiency of the evidence "de novo, 'asking whether a reasonable jury could find a defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government and drawing reasonable inferences therefrom.'" United States v. Irving, 665 F.3d 1184, 1193 (10th Cir. 2011) (alteration omitted) (quoting United States v. Vigil, 523 F.3d 1258, 1262 (10th Cir. 2008)). This Court does not re-weigh the evidence or second-guess factual findings,

6

but rather considers the collective inferences that could be drawn from the evidence as a whole. Id. In reviewing the evidence, "credibility choices must be made in support of the jury's verdict." United States v. Acosta-Gallardo, 656 F.3d 1109, 1124 (10th Cir. 2011).

## 2. Constructive possession standard

"[C]onstructive possession exists where the defendant knowingly has the power to exercise control or dominion over the item." United States v. Al-Rekabi, 454 F.3d 1113, 1118 (10th Cir. 2006). In the narcotics context, constructive possession is "an appreciable ability to guide the destiny of the drug." United States v. Ramirez, 479 F.3d 1229, 1250 (10th Cir. 2007) (internal quotation marks omitted), abrogated on other grounds as recognized in Garrison v. Ortiz, 296 F. App'x 724, 726 (10th Cir. 2008) (unpublished). Constructive possession "may be established by circumstantial evidence." Id. (internal quotation marks omitted). Dominion or control may be exercised "personally or through others who have an adequate tie to the defendant." United States v. King, 632 F.3d 646, 652 (10th Cir. 2011).[5] Where the contraband is found in an area

---

[5] The jury's instructions on possession read, in pertinent part:

> A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.
> More than one person can be in possession of an object if each knows of its presence and has the power and intention to control it.
> A defendant has joint possession of an object when two or more persons share actual or constructive possession of it. However, merely

(continued . . . )

7

of joint occupancy, there must also be proof of "some connection or nexus between the defendant and" the contraband.  Id. at 651 (emphasis omitted).  Such a nexus is shown where the evidence "plausibly support[s] the inference that the defendant had knowledge of and access to" the contraband.  Id.

We have little difficulty concluding that a reasonable jury could find that Mr. Bagby had an "appreciable ability to guide the destiny of the drug[s]," Ramirez, 479 F.3d at 1250, an ability that he could exercise personally.  In the alternative, the evidence was sufficient that a jury could find that Mr. Bagby had an "adequate tie" to Mr. Braggs that would permit him to exercise dominion and control through Mr. Braggs.  King, 632 F.3d at 652.  And although the drugs were found in an area of joint occupancy, there was sufficient evidence of the requisite connection or nexus between Mr. Bagby and the drugs.

### 3.    Evidence of direct control

While possession is distinct from ownership, where the evidence shows that the defendant owned the contraband, such ownership "may be highly relevant where the

---

being present with others who have possession of the object does not constitute possession.

In this situation where the object is found in a place (such as a room or a car) occupied by more than one person, you may not infer control over the object based solely on joint occupancy.  Mere control over the place in which the object is found is not sufficient to establish constructive possession.  Instead, in this situation, the government must prove some connection between the particular defendant and the object.

Trial Transcript at 283-84.  These instructions accurately stated the law, and Mr. Bagby does not argue otherwise.

8

authority to exercise control is disputed." King, 632 F.3d at 653 (internal quotation marks omitted). Mr. Bagby's statements to the police the evening the drugs were found provided sufficient evidence from which a reasonable jury could find that Mr. Bagby owned the drugs. Specifically, as recited above, Mr. Bagby said, "It's all mine. The old men had nothing to do with it." He told the officers where to find the drugs ("[t]here are about nine ounces of hard in the garage"); officers found drugs there; Mr. Bagby told officers he sold drugs ("[w]ould you know about all the food that I've provided because I sell cocaine?"); he told the officers where to find money ("there's about $9,000 in the bedroom in the safe"); and officers in fact found a quantity of money consistent with drug proceeds. Mr. Bagby's repeated offers to the police to "just take the cocaine and the money" and go, and his offer to "work out a deal" involving the drugs, suggested further that he controlled the disposition of the drugs. Finally, although it was Mr. Braggs, and not Mr. Bagby, who gave police a key to the garage on the night the drugs were seized, no evidence was introduced to suggest that Mr. Bagby did not also have free access to the garage. Moreover, Mr. Braggs told officers, when he gave them the key, that he did not "go out there much," Trial Tr. at 51, suggesting, at least circumstantially, that other people who lived in the house went out to the garage more than he did.

All of this evidence, taken together, could reasonably have supported a finding that Mr. Bagby had the ability to exercise dominion or control over the drugs personally.

### 4. Nexus between Mr. Bagby and the drugs

9

No party disputes that the garage where the drugs were seized was an area of joint occupancy. Thus, the government had to prove "some connection or nexus between the defendant and" the contraband, that is, there must be evidence that "plausibly support[s] the inference that the defendant had knowledge of and access to" the contraband. Id. at 651 (emphasis omitted). Mr. Bagby's numerous incriminating statements to police indicating his ownership and control over, and familiarity with, the drugs, as well as their location, were sufficient plausibly to support the inference that Mr. Bagby had "knowledge of and access to" the drugs. Id.

We reject Mr. Bagby's argument that there was "no evidence to tie [the drugs seized] (in particular) to Bagby," Aplt. Reply Br. at 4. Mr. Bagby suggests that the drugs seized belonged to someone else, and Mr. Bagby's drugs went undetected. See id. at 4-5. Circumstantial evidence may be used to establish constructive possession, see Ramirez, 479 F.3d at 1250, and as should be evident by now, we find the record replete with direct and circumstantial evidence that the drugs seized were the very drugs Mr. Bagby referred to when he told officers "[t]here are about nine ounces of hard in the garage." Officer MacKenzie testified that he utilized a drug-sniffing dog after he found what he thought was crack cocaine in the dryer. Officers Brice and MacKenzie also testified to their own training and qualifications, and their lengthy tenures as police officers. From all of this a reasonable jury could have found that the garage was thoroughly searched, that the officers would have seized whatever drugs they found, and that the drugs seized in the garage were the drugs Mr. Bagby referred to.

**5.     Conclusion**

10

Looking at the evidence as a whole, see Vigil, 523 F.3d at 1262, and drawing credibility inferences in support of the verdict as we must, see Acosta-Gallardo, 656 F.3d at 1124, we hold that the evidence was sufficient for a reasonable jury to find that Mr. Bagby had constructive possession of the crack cocaine found in the garage of the Columbia residence.

**B.      Reading of the unredacted indictment**

Immediately after granting Mr. Bagby's motion to represent himself, and prior to bringing in the jury, the district court asked if Mr. Bagby wished to stipulate to his prior felony convictions for purposes of the felon-in-possession count.  At the district court's instruction, Mr. Bagby reviewed a redacted indictment with his standby counsel.  Then, the following exchange took place.

> THE COURT: Mr. Bagby, do you wish to use the redacted indictment or the indictment as it was returned by the grand jury? Answer my question.
>
> MR. BAGBY: Use the first one.
>
> THE COURT: The one returned by the grand jury? You want me to read to the jury your prior crimes?
>
> MR. BAGBY: Yeah, yeah, go ahead.
>
> THE COURT: Well, then I will.

Trial Transcript at 17-18.  The district court read the unredacted indictment to the jury with the rest of the jury instructions, after the defense rested and before closing arguments.

Mr. Bagby argues on appeal that the reading of the unredacted indictment to the jury so prejudiced the jury that it convicted him on the drug charge, in other words that

11

reading the unredacted indictment altered the outcome of the trial. Setting aside the possibility that this was "invited" by Mr. Bagby or not preserved, we conclude in any event that reading the unredacted indictment was non prejudicial, even if it was error. The evidence against Mr. Bagby was overwhelming and reading the unredacted version of the indictment could not have affected the outcome or prejudice Mr. Bagby.

**C.      Admission of Mr. Bagby's penitentiary pack**

Mr. Bagby's refusal to stipulate to his past convictions, in connection with the ammunition charge, required the Government to prove to the jury beyond a reasonable doubt that Mr. Bagby had, in fact, previously been convicted of a felony, an essential element of a violation of 18 U.S.C. § 922(g)(1). See United States v. Kitchell, 653 F.3d 1206, 1228 (10th Cir. 2011) ("To obtain a conviction under [18 U.S.C. § 922(g)(1)], the government must establish three elements beyond a reasonable doubt: (1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce.") (internal quotation marks omitted).

To prove these past convictions, the Government presented expert testimony that Mr. Bagby's fingerprints (which the Tulsa Police Department had on file in the form of a fingerprint card from 1996) matched the prints on a 1994 fingerprint card contained in a "penitentiary pack" in Mr. Bagby's name.[6] In Mr. Bagby's case, his penitentiary pack

_____

[6] A penitentiary pack is a certified copy of the State of Oklahoma's record of an individual's correctional history.

12

apparently contained the judgments against him in his three state drug felonies, his

prisoner records, records relating to his parole and release, and two fingerprint cards.

The penitentiary pack was admitted into evidence as Government's Exhibit 14, after Mr.

Bagby expressly stated he had no objection to its admission.[7]

Mr. Bagby's challenge to the admission of his penitentiary pack rests on the same

ground as his challenge to the reading of his unredacted indictment. Mr. Bagby contends

that the evidence on the drug charge was so weak that learning of the nature of Mr.

Bagby's prior correctional history "so prejudiced the jury against [Mr.] Bagby that a

conviction on [the drug charge] was guaranteed." Aplt. Open Br. at 23.

### 1.    Standard of review

---

[7] The penitentiary pack, as admitted, is not contained in the record on appeal. But the parties do not dispute that it contained descriptions of all of Mr. Bagby's prior felony convictions (including three drug felonies), sentences and fines previously imposed upon him, excerpts from his prison disciplinary record (including a statement that Mr. Bagby was a maximum security inmate), the fact of two denials of parole, and the fact that he was on parole when he committed the instant offense. See Aplt. Open Br. at 21; Aple. Br. at 30-32.

Were it necessary, which it is not in light of the parties' apparent agreement,we could take judicial notice of this penitentiary pack. Mr. Bagby attached a copy of the document to his opening brief, and the Government does not contest the authenticity of it. This Court may take judicial notice of public records. See Fed. R. Evid. 201(d); Guttman v. Khalsa, 669 F.3d 1101, 1127 n.5 (10th Cir. 2012) ("We recognize some documents filed in the district court are not part of the record on appeal. Nevertheless, we have authority to review them because we may take judicial notice of public records, including district court filings."); United States v. Smalls, 605 F.3d 765, 768 n.2 (10th Cir. 2010). And several circuits have held that a certified penitentiary packet is admissible as a self-authenticating public record under Fed. R. Evid. 902(2) and (4). See United States v. Watson, 650 F.3d 1084, 1089-91 (8th Cir. 2011); United States v. Weiland, 420 F.3d 1062, 1073 (9th Cir. 2005); United States v. Dancy, 861 F.2d 77, 79 (5th Cir. 1988). This Court recognizes its authority to take judicial notice of public records. See Guttman v. Khalsa, 669 F.3d 1101, 1127 n. 5 (10th Cir. 2012) (DME panel)

13

Where, as here, the defendant failed to object to the admission of evidence at trial, this Court reviews only for plain error. See United States v. Hinson, 585 F.3d 1328, 1333 (10th Cir. 2009). Plain error is "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Burbage, 365 F.3d 1174, 1180 (10th Cir. 2004); see Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

### 2. The admission of the penitentiary pack was not plain error

Mr. Bagby cites this Court's decision in United States v. Wacker, 72 F.3d 1453 (10th Cir. 1995), and the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172 (1997), for the proposition that the nature and substance of prior convictions are irrelevant to proving guilt under 18 U.S.C. § 922(g).[8] While he is correct that a district court abuses its discretion when it admits extraneous information about a prior felony conviction to prove a § 922(g) violation when the defendant has offered to stipulate to the fact of that prior felony conviction, see Old Chief, 519 U.S. at 174; Wacker, 72 F.3d at 1472-73, here no such offer of stipulation was made.

But even if the district court erred in admitting the penitentiary pack in its entirety, such error was not plain. Neither this Court nor the Supreme Court has ever held that

---

[8] To the extent that Mr. Bagby challenges the admission of the penitentiary pack as it pertained to the ammunition charge, his acquittal on that charge renders any error, if there were one, harmless.

14

where a defendant both refuses to stipulate to the fact of his prior convictions and fails to object to the introduction of extraneous information about those convictions, the district court is nevertheless compelled, sua sponte, to exclude such evidence. In addition, our review of the record shows that the Government did not place any undue emphasis at trial on the nature of Mr. Bagby's prior convictions. See United States v. Dean, 76 F.3d 329, 335 (10th Cir. 1996) (finding no plain error in admission of records of conviction, where the Government "properly curtailed its use of the prior crimes evidence; it did not parade [the defendant's] convictions before the jury or exploit them in any prejudicial fashion" (internal quotation marks omitted)). The Government's opening argument referred only to the fact that the penitentiary pack contained "prior felony convictions" and that the fingerprints in the pack matched Mr. Bagby's. Trial Transcript at 33-34. The Government's fingerprint expert, in connection with whose testimony the penitentiary pack was admitted, did not even use the words "felony" or "conviction" at all to describe the contents of the pack, let alone describe the nature of Mr. Bagby's past crimes.[9] The

---

[9] The relevant testimony from the Government's fingerprint expert was as follows:

Q.   Would you please tell us, identify what the penitentiary pack was and what fingerprints you examined.
     . . . .
A.   . . . A pen pack is a shortened version for penitentiary pack. They normally, at least from the State of Oklahoma, will have a certified copy of the individual's name, will have a background of the individual's history, and at least one 10-fingerprint card that belongs to the individual that the pen pack is all about.

Trial Tr. at 221.

15

officer who seized the ammunition from the Columbia residence testified, on cross-examination by Mr. Bagby and without objection from Mr. Bagby, that he seized it because Mr. Bagby "had convictions for a felony and the possession of ammunition by a felon was a crime." Id. at 191. In its closing argument, the Government said "[t]he pen pack that was offered . . . indicates a number of felony convictions." Id. at 296. At no time did the Government or any of its witnesses discuss the fact that Mr. Bagby's prior felonies were drug-related.

Finally, because we have already concluded that the evidence was otherwise sufficient to convict Mr. Bagby of the drug charge, Mr. Bagby cannot show that the admission of the penitentiary pack affected his substantial rights. That is, Mr. Bagby has not demonstrated that, absent admission of the penitentiary pack, the jury would not have convicted him on the federal drug charge.[10] He has not established "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." United States v. Cordery, 656 F.3d 1103, 1108 (10th Cir. 2011) (internal quotation marks omitted).

Accordingly, we find no plain error in the admission of the penitentiary pack.[11]

_____

[10] On this point, Mr. Bagby simply reiterates that even if this Court finds the evidence was sufficient to convict him on the drug count, it will "necessarily have been barely enough," Aplt. Reply Br. at 5, and therefore that this Court has no choice but to reverse. We simply disagree with Mr. Bagby with respect to the strength of the evidence against him.

[11] Although we conclude here that there was no plain error in the admission of this apparently unredacted penitentiary pack, we caution the Government that the rationale of Old Chief and Wacker—i.e., that only the fact of prior conviction is relevant to a

(continued . . . )

16

**D.    Severance of drug and ammunition counts**

Rule 8(a) of the Federal Rules of Criminal Procedure permits a defendant to be charged in a single indictment with multiple offenses when the offenses are sufficiently related. But Rule 14(a) provides that a court may order the severance of offenses (or defendants) properly joined in a single indictment, if the joinder is unfairly prejudicial to either side. Rule 12(b)(3), in turn, requires that Rule 14(a) motions, as well as motions to suppress evidence, motions alleging defects in instituting the prosecution, motions alleging defects in the indictment, and Rule 16 motions for discovery, "must be raised before trial." Rule 12(e) provides that "[a] party waives any Rule 12(b)(3) defense, objection, or request not raised by the deadline the court sets [for filing pretrial motions]." On the other hand, Rule 52(b) provides generally that on appeal, "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

---

§ 922(g) charge—is persuasive even where the defendant refuses to stipulate to that fact. We emphasize that "evidence concerning the nature of the predicate crime in a felon in possession case is irrelevant and prejudicial," and should be "excluded if possible by use of a redacted record." Wacker, 72 F.3d at 1472.

Similarly, we discern no reason why the Government needed to introduce irrelevant evidence of Mr. Bagby's disciplinary record in prison or his parole status in order to prove that Mr. Bagby had violated 18 U.S.C. § 922(g). To establish the first element of a § 922(g) offense, the Government needed only to establish the fact of a single prior felony conviction. See Kitchell, 653 F.3d at 1228. And although erroneous introduction of prior convictions is subject to harmless-error analysis where the defendant objects below, see United States v. Wilson, 107 F.3d 774, 784-85 (10th Cir. 1997), we leave open the possibility that, on different facts, and under a different standard of review, introduction of an unredacted penitentiary pack might be reversible error.

17

The question of whether severance is appropriate under Rule 14(a) is distinct from the question of whether joinder is proper in the first instance under Rule 8(a). See United States v. Lane, 474 U.S. 438, 449 n.12 ("[T]he Rule 14 prejudice component involves a different inquiry from the Rule 8 technical requirements."). In his briefs, the only statement Mr. Bagby makes that could be construed as a misjoinder argument under Rule 8(a) is that the ammunition and the drugs were seized from different locations, three months apart. The propriety of joinder is a question of law that we review de novo, but where, as here, misjoinder is not raised below, we review only for plain error. United States v. Barrett, 496 F.3d 1079, 1097 (10th Cir. 2007). We find no plain error in the joinder of the counts.

Federal Rule of Criminal Procedure 8(a) permits a defendant to be charged in a single indictment with multiple offenses "if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The Court should construe "Rule 8 . . . broadly to allow liberal joinder to enhance the efficiency of the judicial system." United States v. Price, 265 F.3d 1097, 1105 (10th Cir. 2001). Construing Rule 8 broadly, we conclude that it was not error to join the drug and felon-in-possession counts, but even if it was, the error was not plain, nor did it affect Mr. Bagby's substantial rights. See Burbage, 365 F.3d at 1180.

Our previous cases addressing the propriety of joining drug charges to felon-in-possession charges have usually involved the contemporaneous or near-contemporaneous possession of the drugs and the weapons in question. See, e.g., United States v. Colonna,

18

360 F.3d 1169, 1173, 1177-78 (10th Cir. 2004); United States v. Johnson, 130 F.3d 1420, 1427 (10th Cir. 1997) (citing United States v. Hubbard, 61 F.3d 1261, 1270 (7th Cir. 1995)); United States v. Cox, 934 F.2d 1114, 1119 (10th Cir. 1991). But we have never set a per se temporal proximity that must be met before drug and gun counts may be joined. See, e.g., United States v. Heckard, 238 F.3d 1222, 1231 (10th Cir. 2001) (upholding district court's refusal to sever gun and drug counts even though gun was found twenty-four days after defendant's last known drug trafficking activity); United States v. Holland, 10 F.3d 696, 697, 699 (10th Cir. 1993) (upholding joinder of counts where gun and drugs were found more than three months apart).

The drugs and ammunition were all seized from the Columbia residence, on the suspicion that Mr. Bagby was involved in drug activity. See Heckard, 238 F.3d at 1231 (joinder proper where the defendant "kept [the gun] in a location where drug transactions occurred"). The ammunition, seized in the July 2010 search, was found in Mr. Bagby's room, in the same safe in which officers had found, in the April 2010 search, a significant amount of cash, along with documents associated with Bagby. That cash, in turn, was circumstantially related to the drugs seized from the Columbia residence in April. Mr. Bagby's statements to police, on the day of the April search, that there were drugs in the garage and cash in the bedroom safe, along with his suggestion that the police "just take the cocaine and the money and leave," circumstantially tied the drugs to the money. Officer MacKenzie also testified, based on his training and experience, that the discovery of a large amount of cash in proximity to a large quantity of cocaine was "consistent" with drug dealing activity. Trial Tr. at 89 ("In my career with my training and

19

experience, people that sell large quantities of cocaine have large quantities of currency that they derived from the sale of controlled substances."). We discern no error in the joinder of the drug count and the felon-in-possession count here.

Even if it was error to join the counts, the error was not plain, because it was not "'clear or obvious' under 'well-settled law.'" United States v. Trujillo-Terrazas, 405 F.3d 814, 818 (10th Cir. 2005) (quoting United States v. Whitney, 229 F.3d 1296, 1309 (10th Cir. 2000)). This Court has never held that drug and felon-in-possession counts may not be joined when evidence relating to both is seized from the same residence, but three months apart. And even if the error was plain, it cannot be said to have affected Bagby's substantial rights (1) in light of the fact that he was acquitted on the felon-in-possession count, and (2) because we have concluded that the evidence was overwhelmingly sufficient to convict Bagby on the drug count. As with his challenge to the admission of the penitentiary pack, Bagby does not establish "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." Cordery, 656 F.3d at 1108 (internal quotation marks omitted).

**E.    Section 851 enhancement**

Pre-trial, the Government filed an enhancement information pursuant to 21 U.S.C. § 851, charging that Mr. Bagby had three prior drug felonies and notifying Mr. Bagby that, if convicted, his statutory mandatory minimum would be "life imprisonment without

release and a fine of not more than $8,000,000." Dist. Ct. Dkt. 34, at 1-2.[12] After the

jury returned its guilty verdict on Count 1 (the drug charge), the district court asked Mr.

Bagby if he affirmed or denied the prior convictions.

> THE COURT: All right. Mr. Bagby, would you please come forward. Ms. Atteberry, would you please come forward with him.
>
> All right. First, with regard to Count One, the court finds you guilty of the charge in Count One and you are hereby acquitted of the charge in Count Two.
>
> I have a duty to advise you, under Section 851(b), that there are prior convictions listed in the indictment and I need to ask you to affirm or deny that you were previously convicted of those charges.
>
> MR. BAGBY: Yeah, I was convicted.

Trial Transcript. at 309 (emphasis added). Mr. Bagby argues that the district court's

reference to the "indictment" rather than the "information" is reversible error. His

argument fails.

### 1. Standard of review

Where an enhanced sentence under 21 U.S.C. § 851 is sought based on the fact of

prior felonies, "[w]e review de novo whether the evidence presented by the government

was sufficient to support the district court's findings with regard to the existence of any

such prior felonies." United States v. Harris, 369 F.3d 1157, 1167 (10th Cir. 2004). "In

doing so, we view the evidence and reasonable inferences therefrom in the light most

favorable to the government and will reverse only if a rational trier of fact could not find

---

[12] Volume 1 of the record on appeal, which contains the enhancement information and indictment, is unpaginated. For clarity, therefore, citations to these documents are by reference to the district court docket numbers.

beyond a reasonable doubt that the defendant had in fact been convicted of the offenses." Id. It is the Government's burden to prove the fact of prior conviction beyond a reasonable doubt. See 21 U.S.C. § 851(c)(1).

Procedurally, § 851 requires the district court, "after conviction but before pronouncement of sentence," to inquire of the defendant "whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). Whether the district court properly complies with § 851(b)'s colloquy requirements is subject to harmless-error review. See United States v. Gonzalez-Lerma, 71 F.3d 1537, 1540-41 (10th Cir. 1995), overruled in part on other grounds by United States v. Flowers, 464 F.3d 1127, 1130 n.1 (10th Cir. 2006). Error is "harmless unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." Gonzalez-Lerma, 71 F.3d at 1541 (internal quotation marks omitted).

### 2. There was sufficient evidence of prior felonies

Here, all the crimes listed in the § 851 enhancement information were also listed in the indictment. The language of the indictment and the language of the enhancement information are identical, including the name of the charge, the case number, the jurisdiction, and the date. Thus, when Mr. Bagby admitted, after the jury returned its verdict, to having been convicted of all the crimes in the "indictment," Dist. Ct. Dkt. 11 at 2, he necessarily also admitted to having been convicted of all the crimes listed in the enhancement information. Based on Mr. Bagby's admission and a comparison of the

22

indictment and the enhancement information, a "rational trier of fact," <u>Harris</u>, 369 F.3d at1167, could certainly have found, beyond a reasonable doubt, that Bagby "had in fact been convicted," <u>id.</u>, of the three drug felonies. Accordingly, the evidence was sufficient for the district court to find the existence of the prior felonies, and to impose the mandatory life sentence.

### 3. The district court's procedural error was harmless

It is true that the district court failed to comply with the latter part of § 851(b)'s colloquy requirements (i.e., the district court did not inform Mr. Bagby that his failure to challenge a prior conviction pre-imposition of sentence would preclude his ability to later attack the sentence on that basis). This Court has treated such failure as error, subject to harmless-error analysis. <u>See</u> <u>Gonzalez-Lerma</u>, 71 F.3d at 1540-41. But Mr. Bagby points to no authority holding that a district court's reference to the "indictment" rather than the "information" in the first part of the § 851(b) colloquy is error, and we find none. But assuming, arguendo, that such a misstatement is legal error, we agree with the Government that the error was harmless.

The overwhelming majority of circuits have upheld enhanced sentences under 21 U.S.C. § 851(b) where there has not been strict compliance with that provision's procedural requirements, "in situations where the defendant affirmed that he was the defendant convicted of the prior offense and where any challenge to the prior conviction would have been futile." <u>Gonzalez-Lerma</u>, 71 F.3d at 1541 n.4 (citing cases from the First, Fourth, Fifth, Seventh, Ninth, and Eleventh Circuits); <u>see also</u> <u>United States v. Espinal</u>, 634 F.3d 655, 665 (2d Cir. 2011) (agreeing that non-prejudicial errors in

23

complying with § 851 should not require reversal); <u>United States v. Baugham</u>, 613 F.3d 291, 295-96 (D.C. Cir. 2010) (applying harmless-error review where district court failed strictly to comply with § 851); <u>United States v. Gamboa</u>, 439 F.3d 796, 813-14 (8th Cir. 2006) (same); <u>United States v. Hill</u>, 142 F.3d 305, 312-13 (6th Cir. 1998) (same).

Mr. Bagby admitted he had been convicted of the felonies listed in the indictment, which were the same as the felonies listed in the information. Nowhere does Mr. Bagby assert the invalidity of his prior convictions, and it would have been futile in any case for him to have attempted to do so, as the convictions all occurred more than five years before the date of the enhancement information filed in this case. <u>See</u> 21 U.S.C. § 851(e) ("No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction."); <u>Hill</u>, 142 F.3d at 313 ("[N]either the statute nor reason requires a trial court to adhere to the rituals of section 851(b) where a defendant, as a matter of law [pursuant to § 851(e)], is precluded from attacking the conviction forming the basis of the enhancement information." (second alteration in original) (internal quotation marks omitted)).

Any error committed by the district court was harmless. Accordingly, the Court AFFIRMS the district court's imposition of a mandatory life sentence under 21 U.S.C. § 851.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Bagby's conviction and sentence.