FILED
United States Court of Appeals
Tenth Circuit

February 28, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SOPHIA MONIQUE ZAYAS,

    Defendant - Appellant.

No. 22-2054
(D.C. No. 2:12-CR-00944-RB-2)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **HOLMES**, Chief Judge, **MORITZ**, and **EID**, Circuit Judges.

_____

Defendant-Appellant Sophia Zayas was charged in a sixteen-count indictment

related to the death and physical abuse of her two-month-old daughter, Annalicia

Zayas. The final superseding indictment also contained one charge of child abuse

concerning Zayas's older daughter, Anaya Zayas. Before the case was submitted to

the jury, the district court granted Zayas's motion for judgment of acquittal on Count

16—the charge involving the neglect of Anaya. With respect to the charges

involving Annalicia, the jury found Zayas guilty of second-degree murder in

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

violation of 18 U.S.C. §§ 7 and 1111, and seven counts of intentional child abuse in violation of 18 U.S.C. §§ 7, 13, and N.M. Stat. Ann. § 30-6-1(D).

Zayas now argues that (1) the government failed to proffer sufficient evidence to support her convictions, (2) the district court committed reversible error by refusing to sever the child abuse count concerning her oldest daughter from the other counts, and (3) the district court erred by denying her continuance motion. We disagree and affirm.

## I.

During the relevant time period, Sophia Zayas was a member of the Air Force living on Holloman Air Force base with her husband Peter. On October 22, 2007, Zayas found her two-month-old daughter, Annalicia, unresponsive thirty minutes after putting her down for a nap. An autopsy showed Annalicia had suffered multiple skull fractures, hemorrhages, and scalp contusions within two to three hours of her death. It also revealed Annalicia had ten rib fractures in various stages of healing; healing fractures to her right wrist bones; and lesions on her body, consistent with cigarette burns, some of which showed signs of healing. The medical examiner ruled Annalicia's death a homicide.

Following a police investigation, a federal grand jury indicted Zayas, charging her with various violations of New Mexico law under the Assimilated Crimes Act, 18 U.S.C. §§ 7 and 13.[1] Zayas initially faced fifteen counts stemming from Annalicia's death—one

---

[1] Because the conduct alleged in the indictment occurred within Holloman Air Force base, a federal enclave, the Assimilated Crimes Act provides the United States

count of second-degree murder and fourteen counts of child abuse (with varying mental states) based on the skull fractures, rib fractures, wrist fractures, and lesions. The final superseding indictment included a separate charge of reckless child abuse related to Zayas's older daughter, Anaya.

Prior to trial, Zayas moved pursuant to Federal Rules of Criminal Procedure 8 and 14 to sever the latter child abuse charge pertaining to Anaya from the other charges pertaining to Annalicia. The district court denied Zayas's motion, ruling both that joinder was proper because the offenses were similar in character and that joining the counts did not prejudice Zayas. Still, while the district court rejected Zayas's motion to sever the final child abuse charge concerning Anaya, the court did grant Zayas's motion for judgment of acquittal on that count.

Zayas proceeded to trial, and the jury found her guilty of one count of second-degree murder in violation of 18 U.S.C. §§ 7 and 1111 and seven counts of intentional child abuse in violation of 18 U.S.C. §§ 7, 13, and N.M. Stat. Ann. § 30-6-1(D). Specifically, Zayas was convicted of intentional child abuse causing (a) death (Count 2),[2] (b) great bodily harm (Counts 4, 6, 8, and 10 concerning the skull fractures,

---

with jurisdiction to prosecute Zayas by "borrowing state law" to bolster the "federal criminal law that applies on federal enclaves." *Lewis v. United States*, 523 U.S. 155, 160 (1998). The Act provides that anyone "guilty of any act or omission which, although not made punishable by an enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such [federal enclave] is situated, . . . shall be guilty of a like offense and subject to a like punishment." 18 U.S.C. § 13(a).

[2] The government successfully moved to dismiss Count 2 on the morning of sentencing. Therefore, that conviction is not at issue in this appeal.

3

newer rib fractures, older rib fractures, and wrist fractures, respectively), and

(c) some harm (Counts 12 and 14 concerning the older and newer lesions), as well as

second-degree murder.  This appeal followed.[3]

## II.

To begin, Zayas challenges her convictions on sufficiency-of-the-evidence

grounds.  We review the sufficiency of the evidence de novo "to determine whether,

viewing the evidence in the light most favorable to the government, any rational trier of

fact could have found the defendant guilty of the crime beyond a reasonable doubt."

*United States v. Clark*, 717 F.3d 790, 805 (10th Cir. 2013).  In doing so, this Court may

not "weigh conflicting evidence or consider witness credibility, as these duties are

delegated exclusively to the jury."  *United States v. Irvin*, 682 F.3d 1254, 1266 (10th

Cir. 2012).  "Instead, we presume that the jury's findings in evaluating the credibility

of each witness are correct."  *Id.*  Thus, the ultimate question is "'not whether a

reasonable jury could possibly conceive of an alternative interpretation of the

evidence at trial,'" but rather "whether a rational trier of fact could have found the

elements beyond a reasonable doubt."  *United States v. Burtrum*, 21 F.4th 680, 686

---

[3] During the pendency of this appeal, Zayas filed an unopposed motion to abate the appeal pending the district court's resolution of her motion for a new trial due to newly discovered evidence.  We granted Zayas's motion and placed this appeal in abeyance on August 31, 2023.  The district court subsequently issued orders denying Zayas's motion for a new trial and her motion to reconsider that ruling.  Following those rulings (which Zayas did not appeal), her counsel relayed to this Court that "it would be appropriate for the abatement of the appeal to be lifted."  Aplt. Status Report XI at 1.  Consequently, on August 13, 2024, we lifted the abatement.

(10th Cir. 2021) (quoting *United States v. White Bull*, 646 F.3d 1082, 1089 (8th Cir. 2011)).

## A.

Zayas first claims that the government failed to establish beyond a reasonable doubt that she committed second-degree murder.  In her view, the government never proved any specific conduct on her part that caused Annalicia's death and never definitively proved that she acted with malice aforethought as required to support the second-degree murder charge.  We disagree.

18 U.S.C. § 1111 defines second-degree murder as any unlawful killing of a human being with malice aforethought beyond what is already proscribed by first-degree murder.  *United States v. Pearson*, 159 F.3d 480, 486 (10th Cir. 1998).  This "catch-all murder offense" is a general-intent crime that requires only malice aforethought.  *United States v. Serawop*, 410 F.3d 656, 663 (10th Cir. 2005); *see United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000).

To satisfy the malice-aforethought element, the government must prove one of the following:  "(1) intent-to-kill without the added ingredients of premeditation and deliberation; (2) intent-to-do-serious-bodily-injury; (3) depraved-heart; or (4) commission of a felony when the felony in question is not one of those specified in the first-degree murder paragraph of § 1111(a)."  *Pearson*, 159 F.3d at 486 (citing Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* 648 (2d ed. 1986)).

The government's theory of the case relies on proving either intent to cause serious bodily injury or depraved-heart murder.  Thus, as relevant to this appeal, the

5

depraved-heart version of malice aforethought is "established by evidence of conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *Wood*, 207 F.3d at 1228 (quoting *United States v. Soundingsides*, 820 F.2d 1232, 1237 (10th Cir. 1987)).

Based upon the record, viewed in the light most favorable to the government, we hold that there was ample evidence for a rational jury to conclude that Zayas committed second-degree murder. Focusing first on whether the government presented sufficient evidence to establish Zayas as the perpetrator, we conclude that a rational jury could have inferred that Zayas caused the injuries that led to Annalicia's death.

The jury heard testimony that Zayas was Annalicia's primary caretaker, looked after Annalicia on the day of her death, and was the last person to see Annalicia alive. The jury further heard overwhelming evidence of Zayas's alcohol use and about the substance's effect on her behavior. In particular, the government introduced evidence that alcohol often caused Zayas to become violent and aggressive. Her husband testified, for instance, that she was violent "most of the time when she drank," and when he attempted to stop her from drinking, she would respond by hitting him or threatening to falsely accuse him of rape. R. Vol. V at 547. When coupled with Zayas's statement that she had been binge drinking during the last week of Annalicia's life, including up to the day before her death, a rational factfinder could have inferred that Zayas was either intoxicated or experiencing the

6

effects of withdrawal when caring for Annalicia, ultimately causing Zayas to become violent and fatally harm Annalicia.[4]

Additionally, it does not stretch the bounds of reason for a jury to infer consciousness of guilt from Zayas's inconsistent statements regarding what happened on the day of Annalicia's death. In comments made soon after Annalicia died, Zayas represented that she fed Annalicia at approximately 2:30 p.m., put her down for a nap, and found her unresponsive about thirty minutes later. However, medical experts testified that an infant with head injuries like Annalicia's would "not [be] able to normally feed" and would "exhibit altered behavior." *Id.* at 171. And later, Zayas changed parts of her story, claiming it was Peter who put Annalicia down for a nap—not Zayas, as she initially claimed. These inconsistencies might suggest that Zayas intentionally misrepresented what happened on the day of Annalicia's death to cover up the harm she had caused Annalicia.

"Although false exculpatory statements 'cannot be considered by the jury as direct evidence of guilt,' such statements 'are admissible to prove circumstantially consciousness of guilt or unlawful intent.'" *United States v. Davis*, 437 F.3d 989,

---

[4] At first blush, this argument may appear to use impermissible character evidence in violation of Federal Rule of Evidence 404(b). But this chain of reasoning is not about the impact of a character trait on behavior; rather, it concerns the impact of *alcohol* on behavior. Rule 404 poses no bar to evidence of the defendant's alcohol use when offered to show the physiological or behavioral impact of alcohol ingested by the defendant. In other words, Zayas's alcohol use the week of Annalicia's death is not character evidence—it is chemical evidence. A jury was entitled to believe Zayas was still suffering from the remanent effects of her alcohol consumption—which can cause agitation and violent tendencies—and ultimately harmed her daughter as a result.

996 (10th Cir. 2006) (quoting *United States v. Zang*, 703 F.2d 1186, 1191 (10th Cir. 1982)). Just as in *Davis*, the "jury was entitled to weigh the evidence and decide whether" Zayas "fabricated a story" or "just momentarily could not remember." *Id.* at 966.

Most significantly, Zayas admitted that the only other two people in the home on the day of Annalicia's death—Peter and Zayas's mother, Marva—did not inflict the injuries upon Annalicia. It is true that the government bears the burden of proving Zayas committed the murder beyond a reasonable doubt. *United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011). But without any suggestion of an alternative suspect or an otherwise innocent explanation for Annalicia's death, it is difficult to fault the jury for inferring Zayas was the one who inflicted the fatal injuries.

Instead, Zayas suggests that the government failed to carry its burden because it never proved any specific conduct on Zayas's part that caused Annalicia's death. But there is no requirement that the government prove the identity of the perpetrator through direct evidence. In fact, the Supreme Court has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003). Contrary to Zayas's assertions, then, the evidence necessary to sustain her second-degree murder conviction "need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." *United States v. Wilson*, 182 F.3d 737, 742 (10th Cir. 1999). The

government's evidence regarding Zayas's interactions with Annalicia on the day of Annalicia's death, the effect of alcohol on Zayas's behavior, her inconsistent statements about who saw Annalicia last and what happened on the day of her death, and her own admissions ruling out alternative suspects all provided the jury with an adequate basis to infer that Zayas inflicted the injuries that killed Annalicia.

We turn next to whether the government provided sufficient evidence to prove malice aforethought as required by 18 U.S.C. § 1111. On this score, we conclude that the nature and extent of Annalicia's injuries permitted a rational jury to infer that Zayas intended to cause serious bodily harm.[5] Annalicia died from blunt force trauma to her head. A portion of her skull had been crushed. Her injuries were so severe that they were commensurate with those seen in a motor vehicle crash or a fall from a third-story building. Therefore, it was eminently rational for a jury to conclude that Annalicia's injuries were no accident. Rather, the level of force required to cause the severe head trauma Annalicia suffered creates a reasonable inference that Zayas intended to cause significant bodily harm to her daughter. *See Soundingsides*, 820 F.2d at 1243 (concluding that the extent and nature of the injuries have "considerable probative value" on the issue of malice aforethought); *Wilson v. Sirmons*, 536 F.3d 1064, 1115 (10th Cir. 2008) (same); *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017) (stating that the extent of injuries can be strongly

---

[5] Alternatively, at the very least, Zayas's conduct was reckless and wanton, such that Zayas was aware of a serious risk of death or serious bodily harm. Under either theory, a rational factfinder was permitted to infer malice aforethought.

probative of intent to cause the requisite quantum of harm).  The jury could have easily determined, in accord with their other finding that Zayas inflicted the injuries, that a parent who crushed her two-month-old's skull, broke multiple ribs, and failed to alert emergency responders of any such injuries until after her daughter perished acted with malice aforethought—especially in the absence of any evidence indicating the injuries were consistent with an accident.

In sum, there was sufficient evidence for a rational jury to determine that Zayas inflicted the fatal injury on Annalicia and that Zayas acted with malice aforethought when doing so.  Accordingly, we reject Zayas's sufficiency-of-the-evidence challenge to her second-degree murder conviction.

**B.**

Zayas further challenges her six intentional child abuse convictions (Counts 4, 6, 8, 10, 12, and 14) on sufficiency-of-the-evidence grounds.  Specifically, Zayas contends that the government failed to prove that (1) she possessed the requisite mental state and (2) she caused certain consequences, such as great bodily harm, as required under New Mexico law.

Under the New Mexico child abuse statute, N.M. Stat. Ann. § 30-6-1(D), "[a]buse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:  (1) placed in a situation that may endanger the child's life or health [or] (2) tortured, cruelly confined or cruelly punished."  *Id.*  The jury convicted Zayas on Counts 4, 6, 8, 10, 12, and 14, all under the mens rea of "intentional" child abuse.  Intentionality, in turn, requires a

"conscious objective" to endanger, torture, or cruelly punish the child victim. *State v. Schoonmaker*, 105 P.3d 302, 311 (N.M. Ct. App. 2004), *rev'd on other grounds*, 176 P.3d 1105 (N.M. 2008).

As with the second-degree murder charge, there was sufficient evidence to support the jury's finding that Zayas intentionally abused Annalicia based on the nature and extent of Annalicia's injuries. The jury heard testimony from medical experts that the injuries were the result of abusive behavior rather than a series of accidents. For instance, Dr. Campbell, a forensic pediatrician, testified that Annalicia likely did not fracture her skull by falling off of a bed. Dr. Campbell further explained that Annalicia was too young to have developed the kind of reflex required to break her wrist by bracing for a fall. And Dr. Aurelius, a forensic pathologist, explained that any of the attempted life-saving measures performed on Annalicia, including CPR, did not create the type of rib fractures she suffered. Moreover, because the rib fractures showed different levels of healing, the injuries occurred from at least two different incidents—an obvious indication of abuse. Even Zayas's own expert witness, Dr. Wilson, testified that Annalicia "suffered injuries as a result of abusive conduct." R. Vol. V at 1038. Accordingly, the record adequately demonstrates intentionality.

The New Mexico Supreme Court's decision in *State v. Galindo*, 415 P.3d 494 (N.M. 2018), lends further support to the jury's finding of intentionality. There, the court affirmed the defendant's conviction for intentional child abuse, reasoning that "[b]ased on all of [the] evidence, including Baby's extremely young age and the

11

extent and severity of her injuries—particularly to her head—the jury could have reasonably concluded that Defendant acted intentionally and without justification." *Id.* at 501. The jury, the court explained, "was free to credit certain evidence that did not support Defendant's explanation of Baby's injuries," even if such proof was only circumstantial. *Id.* As in *Galindo*, the government's evidence regarding the severity, variety, and nature of Annalicia's injuries strongly supports the conclusion that the injuries were the result of purposeful abuse. Therefore, a rational jury could have concluded Zayas acted intentionally.

Turning next to Zayas's argument that Annalicia's injuries did not result in the level of harm required by the New Mexico child abuse statute. Zayas's convictions can be subdivided into abuse causing (1) great bodily harm (Counts 4, 6, 8, and 10 concerning the skull fractures, newer rib fractures, older rib fractures, and wrist fractures, respectively) and (2) some harm (Counts 12 and 14 concerning the older and newer lesions). Put simply, Zayas contends that the injuries pertaining to Counts 4, 6, 8, and 10 did not result in great bodily harm. We disagree and thus decline to disturb the jury's finding on this point.

New Mexico state law defines "great bodily harm" as "an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body." N.M. Stat. Ann. § 30-1-12(A). Protracted impairment, as that term is used in the statute, is "not a technical term" and simply means a "'lengthy or unusually long time under the circumstances.'" *State v.*

12

*Cordova*, 366 P.3d 270, 275 (N.M. Ct. App. 2015) (quoting *State v. Jim*, 765 P.2d 195, 200 (N.M. Ct. App. 1988)).

Whether the impairment was for a sufficiently extended period so as to meet this definition is a context-specific inquiry. Considering the circumstances of Annalicia's short, two-month life, a jury could have rationally concluded that the skull, rib, and wrist fractures all constituted prolonged impairments of the function of Annalicia's body. This is not a case where the victim had the opportunity to recover from her injuries during the remainder of her life. Rather, this is a case involving a two-month-old child who suffered significant bone fractures for almost the entirety of her life. Therefore, even though an expert witness, Dr. Campbell, testified that that there was no reason to believe that the fractures would have caused any permanent issues had Annalicia lived, the jury could have rationally concluded that Annalicia suffered protracted injuries relative to her short, two-month life.

New Mexico courts have upheld jury determinations of great bodily harm even when the harm lasted for only a month, just as in this case. *See, e.g.*, *Cordova*, 366 P.3d at 275 ("[E]xtreme and immobilizing pain [from bruised ribs] over the course of the month, in addition to recurrent bouts of pain, were sufficient to constitute great bodily injury, and we will not interfere with [the jury's] determination."); *State v. Begay*, No. A-1-CA-35964, 2019 WL 643706, at \*5 (N.M. Ct. App. Jan. 16, 2019) (concluding that a jury could permissibly find a gunshot wound that "took about a month" to "fully heal" constituted "prolonged impairment").

13

As such, there was sufficient evidence for any rational jury to determine that Zayas intentionally abused Annalicia and that Annalicia's injuries resulted in great bodily harm.[6]  Accordingly, we reject Zayas's sufficiency-of-the-evidence challenge to her intentional child abuse convictions.

**III.**

Zayas next contends that joinder of Count 16—the intentional and reckless child abuse of Zayas's older daughter, Anaya—with the remaining counts involving the child abuse and murder of Annalicia was improper under Federal Rule of Criminal Procedure 8(a), or, alternatively, that the district court erred by denying severance of those counts under Federal Rule of Criminal Procedure 14(a).

Although often conflated, misjoinder under Rule 8(a) and severance pursuant to Rule 14(a) are distinct claims and thus are subject to different legal standards. *United States v. Bagby*, 696 F.3d 1074, 1086 (10th Cir. 2012).  Rule 8(a) "permits a defendant to be charged in a single indictment with multiple offenses 'if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar

---

[6] Although our discussion focuses on whether Annalicia's injuries resulted in "protracted impairment," the jury's finding that Annalicia's skull fractures and newer rib fractures (Counts 4 and 6) caused great bodily harm is adequately supported by an alternative theory.  As discussed above, "great bodily harm" also encompasses "an injury to the person which creates a high probability of death."  N.M. Stat. Ann. § 30-1-12(A).  The Supreme Court of New Mexico has concluded that, under this provision, injuries "causing death" constitute "great bodily harm."  *State v. Varela*, 993 P.2d 1280, 1286 (N.M. 1999).  Thus, because an expert witness established that "Annalicia [] died of multiple blunt force injuries, not just to her head, but all of those injuries in her ribs also," a jury was entitled to find that the skull and most recent rib fractures resulted in great bodily harm.  R. Vol. V at 176–77.

character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.'" *Id.* (quoting Fed. R. Crim. P. 8(a)). Rule 14(a), on the other hand, provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

We review the propriety of joinder under Rule 8 de novo. *Bagby*, 696 F.3d at 1086. But "[w]e review the district court's denial of a motion to sever [under Rule 14] for an abuse of discretion." *Clark*, 717 F.3d at 818.

With that distinction in mind, we first conclude that the district court did not err by joining the child abuse count related to Anaya's neglect with the remaining child abuse counts concerning Annalicia pursuant to Rule 8(a). While Count 16 involved a different victim, all sixteen counts concerned the physical abuse and harm of Zayas's children. Crimes of violence perpetrated by a parent against their children are precisely "of the same or similar character" as contemplated by Rule 8(a). *Cf. United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995) (explaining that drug offenses "in violation of the same comprehensive act" are similar in character under Rule 8(a)). In light of our statements that Rule 8 "is [to be] construed broadly to allow liberal joinder to enhance the efficiency of the judicial system," we hold that joinder of Count 16 was proper under Rule 8(a) because it was an offense of the "same or similar character" as the remaining counts. *United States v. Hopkinson*, 631 F.2d 665, 668 (10th Cir. 1980).

15

"Even if the requirements of Rule 8(a) are met," however, "Federal Rule of Criminal Procedure 14(a) [still] permits a trial court to conduct separate trials if the joinder of separate offenses 'appears to prejudice a defendant.'"  *United States v. Olsen*, 519 F.3d 1096, 1102 (10th Cir. 2008) (quoting Fed. R. Crim. P. 14(a)).  That said, Zayas faces an uphill battle in her Rule 14 challenge.  "We have long recognized that the decision 'to grant severance under Rule 14 rests within the discretion of the district court[,] and the burden on [the] defendant to show an abuse of discretion in this context is a difficult one.'"  *Id.* (second alteration in original) (quoting *United States v. Johnson*, 130 F.3d 1420, 1427 (10th Cir. 1997)).

To obtain reversal, the defendant must first show actual prejudice, meaning that the "right to a fair trial is threatened or actually deprived."  *Johnson*, 130 F.3d at 1427.  Prejudice can occur, for example, if joinder "would compromise a specific trial right" or "prevent the jury from making a reliable judgment about guilt or innocence."  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

If prejudice is shown, the defendant must then demonstrate that the "prejudice would 'outweigh' the expense and inconvenience of separate trials."  *United States v. Hutchinson*, 573 F.3d 1011, 1025 (10th Cir. 2009) (quoting *United States v. Martin*, 18 F.3d 1515, 1518 (10th Cir. 1994)).  If the defendant fails to make either showing, we will not disturb the district court's severance determination.

Zayas argues that the district court's refusal to sever Count 16—the intentional and reckless child abuse of Anaya—from the other counts, which involved child abuse of Annalicia, prejudiced the jury's consideration of these first fifteen counts.

16

The crux of her argument is that the inclusion of Count 16 allowed the government to present evidence related to Zayas's past abuse of Anaya that would have been inadmissible in a separate trial of the other fifteen counts surrounding the abuse of Annalicia, impermissibly painting her as a bad mother and serial child abuser.

While it is true that, in the context of joinder of offenses sharing the "same or similar character," the jury might use evidence of one crime to infer a "criminal disposition or propensity" on the part of the defendant and thus "corroborate the commission of the other crime [or crimes charged]," *United States v. Muniz*, 1 F.3d 1018, 1023 (10th Cir. 1993) (alteration in original), we disagree with Zayas's assertion that the jury did so here. Two considerations cast doubt on her argument: (1) the strength and nature of the evidence concerning the six child abuse convictions and (2) the fact that the district court acquitted Zayas on Count 16 before jury deliberations.

As discussed above, there was overwhelming evidence that Zayas murdered and intentionally abused Annalicia. *See supra* Part II. Thus, it is speculative that the inclusion of Count 16 had an impact on the verdict. A jury is less likely to fall victim to the impermissible "once a child abuser, always a child abuser" inference when the second instance of child abuse features stronger and more inflammatory evidence than the first instance. And even though Zayas was ultimately acquitted on Count 16, "[w]e have repeatedly held that simply because 'the government's evidence was stronger on some counts than on others does not mandate severance under Rule 14.'" *Olsen*, 519 F.3d at 1103 (quoting *United States v. Wiseman*, 172 F.3d 1196, 1212

(10th Cir. 1999)).  We have also held that "[t]he district court [is] not required to sever the counts simply because . . . the 'defendant might have a better chance for acquittal by separate trials.'" *Johnson*, 130 F.3d at 1427 (quoting *United States v. Hollis*, 971 F.2d 1441, 1457 (10th Cir. 1992)).

Second, it is notable that the district court granted Zayas's motion for acquittal concerning Count 16 prior to jury deliberations on the other fifteen counts, because doing so meant that the jury did not consider Count 16 at all.  Presumably, the jury was not discussing evidence related to Anaya's abuse or reviewing evidence irrelevant to the counts concerning Annalicia while deliberating.  In other words, Count 16 was entirely out of the jurors' minds when they decided Zayas's fate on the remaining charges.  Thus, any impact of including Count 16 was minimal.

Zayas argues that her acquittal of this count "enhanced" the "prejudicial effect" and demonstrates that its inclusion "was a blatant effort to widen the scope of prejudicial evidence that could be admitted at trial."[7]  Aplt. Reply Br. at 24.  But it is not entirely clear why the inclusion of an ultimately acquitted charge would

---

[7] This argument is forfeited because Zayas did not raise it below by, for example, moving for a mistrial after the district court granted the acquittal on Count 16.  Because Zayas does not argue plain error on appeal, the argument is likewise waived.  *See United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019).  We nonetheless consider Zayas's argument because the government did not argue waiver until oral argument.  *See id.* at 1199 (explaining that the government's failure to raise forfeiture may "function as a waiver of the Government's opportunity to hold Defendant to [her] failure to preserve [her] argument"); *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 n.8 (10th Cir. 2009) ("An argument made for the first time at oral argument, however, will not be considered.").

automatically prejudice Zayas. Instead of considering the additional evidence for Count 16 as evidence of guilt for the other counts, a jury could have inferred that, because the district court acquitted Zayas of abusing Anaya, she was also not guilty of abusing Annalicia. Put differently, the jury could have inferred that, because the government's evidence was weak on Count 16, it must also be weak on the remaining counts. Thus, in the end, joinder of Count 16 may have actually *helped* Zayas, contrary to her argument. Accordingly, we cannot say that Zayas's right to a fair trial was "threatened or actually deprived" as required to show actual prejudice.[8]

In sum, we hold that the district court did not err in allowing Count 16—the charge involving the neglect of Zayas's oldest daughter, Anaya—to be joined with the other abuse counts of Annalicia under Rule 8(a) because they are of the "same or similar character." Further, we hold that the district court did not abuse its discretion in denying Zayas's request to sever Count 16 under Rule 14(a) because she failed to show actual prejudice.

**IV.**

Lastly, Zayas challenges the denial of her motion for a continuance. We review the district court's denial of motion to continue for an abuse of discretion and

---

[8] Because we decide that joining Count 16 did not actually prejudice the remaining counts, we have no occasion to review the district court's conclusion that any prejudice failed to outweigh the expense and inconvenience of separate trials. We do note that the judicial economy considerations in this case appear to be significant. Many of the same witnesses that testified regarding the abuse of Annalicia, such as Zayas's family members and the investigating officers, also testified regarding the abuse of Anaya. And separate trials would have featured much of the same documentary evidence.

"will only find error if the district court's decision was 'arbitrary or unreasonable and materially prejudiced' the defendant." *United States v. McClaflin*, 939 F.3d 1113, 1117 (10th Cir. 2019) (quoting *Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1151 (10th Cir. 2007)). Whether a denial is arbitrary or unreasonable involves an examination of four factors: "(1) the diligence of the party seeking the continuance; (2) the likelihood the continuance, if granted, would have accomplished the stated purpose; (3) the inconvenience to the opposing party, witnesses, and the court; and (4) the need for the continuance and any harm resulting from its denial." *Id.* We address each factor in turn and hold that the district court did not abuse its discretion.

The first factor—the diligence of the moving party—weighs against Zayas. The defense moved for a continuance on May 21, June 1, and June 8, 2021, seeking to move the trial date from June 14, 2021, to November or December 2021. As Zayas's counsel explained, the defense believed with near certainty that the government and Zayas would reach a plea agreement and avoid trial. Counsel only became aware that the case would proceed to trial during the last week of April 2021 when the government's deadline for an agreement passed. After a potential plea deal fell through, defense counsel scrambled to obtain co-counsel to prepare for the then-impending trial and began sifting through discovery documents of over 8,000 pages, in addition to photographs and audio recordings—what the defense described as an "overwhelming task." R. Vol. II at 215.

But failing to prepare for trial until after a plea deal falls through does not qualify as diligence. A criminal defendant "has no right to be offered a plea."

20

*Missouri v. Frye*, 566 U.S. 134, 148 (2012).  Thus, any competent criminal defense lawyer should be keenly aware of the possibility that a case might proceed to trial. That is not to say that lawyers in every criminal case need to draft their closing statements before negotiating a plea agreement.  But counsel must attempt to develop a trial strategy or, at the very least, create a contingency plan in the event that plea discussions break down.  Zayas's counsel did not do so here.  Despite representing Zayas in this matter since February 2016, including Zayas's first appeal before this Court, her counsel gambled on obtaining a plea deal and only attempted to remedy her miscalculation by seeking co-counsel less than a month before trial.[9]  This was not diligent.

Even assuming it was reasonable to begin preparing for trial only after plea discussions broke down, factors three (the inconvenience resulting from a continuance) and four (the need for a continuance) again weigh against Zayas.[10] Because "any continuance granted practically on the eve of trial inevitably will disrupt the schedules of the court, the opposing party, and the witnesses who have been subpoenaed or who have voluntarily arranged their schedules to attend the

---

[9] Moreover, defense counsel claims that "although [she] had requested electronic discovery since December 2020, she only began to receive it from the government on April 26th."  Aplt. Reply Br. at 26.  However, defense counsel makes no claim that she acted diligently in attempting to receive discovery before April 26, 2021.

[10] Admittedly, Zayas has satisfied the second factor—the likelihood that a continuance would accomplish the purpose underlying the articulated need for a delay.  The continuance was requested in order to get newly obtained co-counsel up to speed.  Granting the continuance would have accomplished that purpose.

trial," Zayas's continuance motions one month before the scheduled trial date would have certainly inconvenienced not only the government, but also the court, which had already moved the trial date on multiple occasions. *United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (en banc).

Further, Zayas has failed to establish that the denial of a continuance "materially prejudiced" her. *United States v. West*, 828 F.2d 1468, 1471 (10th Cir. 1987). As mentioned above, defense counsel represented Zayas in this matter for over five years. *See Rivera*, 900 F.2d at 1475 (noting that defense counsel's representation of defendant for a "considerable time" was an important consideration in whether a continuance was warranted). And Zayas had close to a year and a half since this Court remanded her case to prepare for trial. *See United States v. Zayas*, 802 F. App'x 355 (10th Cir. 2020). Under the circumstances, that is more than enough time to adequately prepare for trial, even in a case where plea negotiations broke down unexpectedly.

Moreover, the desire to obtain co-counsel is ordinarily not a legitimate need for a continuance. A single court-appointed counsel ensures "constitutionally adequate representation." *Clark*, 717 F.3d at 811–12. Thus, in the context of a continuance request, we do not "see how the addition of a second attorney should place the defendant in a better position." *Rivera*, 900 F.2d at 1475. It is further notable that while the district court did not grant Zayas's continuance motion, it did move the trial date from June 14 to July 26, 2021, giving Zayas's counsel three

22

months from the time plea negotiations broke down to obtain co-counsel and prepare for the impending jury trial. The need for further time was therefore not justified.

"The decision of whether to grant a continuance rests within the sound discretion of the trial court." *Id.* at 1476. We cannot say, on the record before us, that the district court abused that discretion.

## V.

For the reasons stated above, we AFFIRM.

Entered for the Court

Allison H. Eid
Circuit Judge